## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUSTIN SMITH<br>11908 Millbrook Road<br>Philadelphia, PA 19154<br><br>  Plaintiff,<br><br>v.<br><br>WALMART, INC. *d/b/a* WAL-MART<br>SUPERCENTER<br>4301 Byberry Road<br>Philadelphia, PA 19154<br><br>  Defendant. | CIVIL ACTION<br><br>No. _____<br><br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Plaintiff, by and through his undersigned counsel, hereby avers as follows:

### INTRODUCTION

1. This action has been initiated by Justin Smith (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) against Walmart (*hereinafter* referred to as "Defendant" unless indicated otherwise) for violations of Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 2000d *et seq.*), Section 1981 of the Civil Rights Act of 1866 ("Section 1981" – 42 U.S.C. § 1981), the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et. seq.*), and the Pennsylvania Human Relations Act ("PHRA").[1] As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

---

[1] Plaintiff's claims under the PHRA are referenced herein for notice purposes. He is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC. Plaintiff must however file his lawsuit in advance of same because of the date of issuance of his federal right-to-sue-letter under Title VII and the ADA. Plaintiff's PHRA claims however will mirror identically his federal claims under Title VII and the ADA.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws.

3. This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant is deemed to reside where it is subjected to personal jurisdiction, rendering Defendant a resident of the Eastern District of Pennsylvania.

5. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed said charge with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff has properly exhausted his administrative proceedings before initiating this action by timely filing and dual-filing his Charge with the EEOC and PHRC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

## PARTIES

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiff is an adult individual, with an address as set forth in the caption.

7. Defendant Walmart Inc. *d/b/a* Wal-Mart Superstore is an American multinational retailing corporation that operates as a chain of hypermarkets, discount department stores, and

grocery stores in multiple states, including the location at which Plaintiff worked in Philadelphia, PA (as identified in the above caption).

8. At all times relevant herein, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

9. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10. Plaintiff is an adult Caucasian male.

11. Plaintiff was employed with Defendant as a laborer for approximately 1.5 years, from in or about March of 2017 until his unlawful termination (as discussed *infra*) on or about October 9, 2018.

12. During his employment with Defendant, Plaintiff was a hard-working employee who performed his job well.

13. Plaintiff was primarily supervised by a black male supervisor Abron (last name unknown, *hereinafter* referred to as "Abron").

14. Plaintiff's mother, Theresa Smith (*hereinafter* "TS"), was also employed with Defendant (as a cashier) for approximately 1.5 years, from in or about March of 2017 until in or about October of 2018.

### Retaliation -Wrongful Termination & Hostile Work Environment

15. During Plaintiff's tenure with Defendant, his mother (TS) engaged in multiple forms of protected activity. For example, but not intended to be an exhaustive list:

   a. TS was subjected to unwelcomed sexual comments and gestures by Customer Service Manager, Brian, including comments such as "You're wet between the

legs," "Lick my clit," and "You're just mad because you're wet between the legs, lick my clit." TS reported the conduct to Defendant's management and corporate representatives on several occasions throughout her employment with Defendant; however, her complaints were not well-addressed and she was subjected to retaliation (as discussed *infra*), which she also continually reported to Defendant's management and corporate representatives;

b. At all times relevant during her employment with Defendant, TS suffered from a seizure disorder, which required daily medication and resulted in periodic seizures, and (at times) limited her ability to perform some daily life activities. Despite her serious health condition and limitations, TS was still able to perform the duties of her job well; however, she required reasonable medical accommodations in the form of intermittent and/or block leave for doctor's appointments and treatment. TS was faced with hostility and animosity and multiple forms of retaliation from Defendant's management because of her disability and requests for accommodations, including but not limited to Defendant's failure to accept her doctors' notes and approve her leave, and Defendant's management's assessment of points against her for utilizing reasonable accommodations in the form of medical leave. TS complained on several occasions about the aforesaid disability discrimination and retaliation that she was being subjected to; however, her complaints were not well-addressed, and she continued to report the retaliation and disability discrimination to Defendant's management and corporate representatives; and

c. During her tenure with Defendant, TS (Caucasian) was discriminated against and subjected to a hostile work environment based on her race. Two black cashier

supervisors treated TS in a rude and condescending manner and regularly talked down to her; selectively enforced policies against her; and unlike her black-co-workers refused to sign off on TS's training graduation (to qualify for a raise) and assessed disciplinary points against her for infractions she did not actually commit. TS complained of discrimination to Defendant's management but was in turn faced with increased hostility and animosity and multiple forms of retaliation from Defendant's management because of her reports of race discrimination.

16. It was widely known throughout Plaintiff's work location, that TS made the aforementioned complaints of sexual harassment, disability discrimination, racial discrimination, and/or retaliation for making complaints of discrimination to several members of Defendant's management and corporate representatives. This caused a significant corporate presence in the workplace.

17. Upon information and belief, Defendant's management and corporate representatives largely ignored TS's aforesaid complaints of discrimination.

18. Instead, Defendant's management subjected both TS and Plaintiff to retaliatory behavior. For example, but not intended to be an exhaustive list:

   a. Defendant's management removed TS her from the cash registers, subjected her to pretextual admonishment, shifted her around to different departments that were disliked generally or where she had to perform heavy lifting; gave her increasingly more work than other employees, reduced her hours, and eventually removed her from the schedule entirely[2]; and

---

[2] This is not an exhaustive list of the retaliatory and/or discriminatory actions taken against TS during Plaintiff's employment with Defendant.

  b. Defendant's management, including but not limited to Abron, treated Plaintiff in a condescending manner; overly scrutinized and criticized his work; selectively enforced policies against him; and also gave him increasingly more work than other employees.

19. In the midst of TS's complaints of sexual harassment, discrimination, and retaliation, Plaintiff was abruptly terminated on or about October 9, 2018.[3] Defendant's management claimed that Plaintiff was being terminated for allegedly writing some graffiti in the workplace (discussed in further detail *infra*). Plaintiff was accused of this conduct, even though he had no history of engaging in this conduct and despite the fact that anyone who worked in the store could have been responsible for the graffiti.

20. Plaintiff's termination was completely pretextual, as his termination occurred (1) in the midst of TS's complaints of sexual harassment, discrimination, and retaliation; and (2) after being subjected to multiple forms of harassment following TS's complaints of discrimination and retaliation.

21. Plaintiff believes and therefore avers that he was terminated in retaliation for his mother's (1) complaints of sexual harassment; (2) complaints of disability discrimination; (3) complaints of racial discrimination; and/or (4) requests for reasonable medical accommodations.

### Race Discrimination

22. In addition to being subjected to retaliatory harassment by Defendant's management because of his mother's request for medical accommodation and/or complaints of sexual harassment, discrimination and retaliation, Plaintiff was also discriminated against and subjected to a hostile work environment based on his race.

---

[3] Plaintiff's mother was terminated shortly thereafter, in or about November of 2018.

23. From in or about April of 2017 until Plaintiff's termination from Defendant on or about October 9, 2018, Abron subjected Plaintiff and other Caucasian employees to race discrimination and harassment. By way of example, but not intended to be an exhaustive list:

   a. Unlike Plaintiff's black co-workers, Abron treated Plaintiff and other Caucasian employees in a rude and demeaning manner, and regularly talked down to them;

   b. Unlike Plaintiff's black co-workers, Abron selectively enforced policies against Plaintiff and his Caucasian co-workers;

   c. Plaintiff was given substantially more work by Abron than Plaintiff's black co-workers; and

   d. Plaintiff's black co-workers were permitted to use their personal cell phones during work hours; however, Plaintiff and his Caucasian co-workers were not permitted to or were disciplined for same.

24. While employed with Defendant, Plaintiff complained to Defendant's management, including but not limited to Abron; Store Manager, Andrew (Caucasian – *hereinafter* "Andrew"); and Assistant Manager, Fiona (black – hereinafter "Fiona") about the aforementioned instances of race discrimination.

25. Despite Plaintiff's aforesaid complaints of discrimination, Defendant failed to properly investigate or resolve such concerns, and Plaintiff was subjected to progressive hostility and animosity by Defendant's management.

26. For example, toward the end of Plaintiff's employment with Defendant, Custom Service Manager, Kwami (black – spelled phonetically), approached Plaintiff and asked him if he had seen the graffiti on the bathroom walls and if he was responsible. Plaintiff replied that he had seen the graffiti but was not responsible.

27. Shortly thereafter, on or about October 9, 2018, Abron approached Plaintiff and a group of other employees who were gathered around a piece of equipment in the back room that contained graffiti. Despite the fact that there were several employees around the equipment, and that Abron had not witnessed anyone drawing directly on the equipment, Abron walked directly up to Plaintiff and stated, "I think this will be the last day you are working here."

28. Approximately 15 minutes after Abron discovered Plaintiff and a group of employees standing around a piece of Defendant's equipment that contained graffiti, Plaintiff was called into a meeting with Assistant Manager, Crystal Dunn (*hereinafter* "Dunn"). Dunn informed Plaintiff that he was being terminated because Abron had witnessed Plaintiff drawing with a marker on Defendant's equipment.

29. Dunn further advised Plaintiff during his termination meeting that while she suspected that he drew on the bathroom stalls, she was not terminating him for same because she had no proof.

30. Defendant's reason for terminating Plaintiff on or about October 9, 2018 – writing graffiti on workplace surfaces – was completely pretextual because Plaintiff had no history of engaging in this conduct and Abron discovered the graffiti on Defendant's equipment sometime after it had been applied. As a result, anyone in the workplace who used the store restrooms or worked in the facility could have been responsible for the graffiti.

31. Plaintiff believes and therefore avers that he was abruptly terminated from his employment with Defendant on or about October 9, 2018, because of his race and/or his complaints of race discrimination.

## COUNT I
### Violation of Title VII of the Civil Rights Act of 1964 ("Title VII")
### (Retaliation – Wrongful Termination)

32. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

33. In the midst of his mother's (TS) renewed complaints of sexual harassment, discrimination, and retaliation under Title VII, Plaintiff was subjected to retaliatory harassment by Defendant's management, including but not limited to condescending, demeaning, and disparate treatment.

34. Within weeks of TS's complaints of sexual harassment and race discrimination, and/or TS's complaints of retaliation for reporting same, Defendant terminated Plaintiff's employment on or about October 9, 2018, for completely pretextual reasons.

35. It is therefore believed and averred that Plaintiff was ultimately terminated from his employment with Defendant because TS complained of discrimination and retaliation under Title VII.

36. These actions as aforesaid constitute retaliation under Title VII. [4]

---

[4] Even if an individual is not a witness or a direct complainant of discrimination, a termination of "someone so closely related to or associated with the person exercising his or her statutory rights" under Title VII is actionable retaliation. *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 179 (2011). Of those individuals that are related to a claimant, "a close family member will almost always meet the Burlington standard" and therefore qualify as being within the protected "zone of interests." *Id.*, 175; *See also Milton v. Milligan*, 2013 WL 828591, at *2 (N.D. Fla. 2013) (The Supreme Court's holding in *Thompson* that anyone in the "zone of interests" of a person engaging in statutorily protected activity is protected from retaliation applies to § 1981 and any motion to dismiss to the contrary would be "unfounded"); *Barber v. JTEKT Auto. Virginia, Inc.*, 2012 WL 1577364, at *17 (W.D. Va. 2012) (denying summary judgment as to several plaintiffs' retaliation claims under Title VII and § 1981 in part because the plaintiffs could have fallen within the "zone of interests" to be protected from retaliation for other employees complaining of discrimination).

## COUNT II
## Violations of the Americans with Disabilities Act, as Amended ("ADA")
### (Retaliation – Wrongful Termination)

37. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

38. In the midst of his mother's (TS) requests for accommodations and renewed complaints of disability discrimination, failure to accommodate, and retaliation under the ADA, Plaintiff was subjected to retaliatory harassment by Defendant's management, including but not limited to condescending, demeaning, and disparate treatment.

39. Within weeks of TS's complaints of disability discrimination and failure to accommodate, and/or TS's complaints of retaliation for reporting same, Defendant terminated Plaintiff's employment on or about October 9, 2018, for completely pretextual reasons.

40. It is therefore believed and averred that Plaintiff was ultimately terminated from his employment with Defendant because TS complained of disability discrimination and a failure to accommodate under the ADA.

41. These actions as aforesaid constitute retaliation under the ADA.[5]

---

[5] *Fogleman v. Mercy Hosp.*, 283 F.3d 561, 564 (3d. Cir. 2002) (explaining that "the ADA contains an additional anti-retaliation provision that makes it unlawful for an employer 'to coerce, intimidate, threaten, or interfere with any individual' exercising rights protected under the Act. 42 U.S.C. § 12203(b)" and holding that "[Plaintiff's] claim that he was retaliated against for his father's protected activity is valid as a matter of law"); *Morgan v. Napolitano*, 988 F. Supp. 2d 1162, 1178 (E.D. Cal. 2013) ("[I]t would appear that the [Supreme] Court's reasoning in *Thompson* [for Title VII] applies equally to the ADA and the ADEA. Third-party retaliation claims therefore appear equally cognizable under those statutes."); *Wychock v. Coordinated Health Sys.*, 2003 U.S. Dist. LEXIS 3376, *17 (E.D. Pa. Mar. 4, 2003) (holding that the ADA anti-retaliation provision "allows for a cause of action by an employee who did not engage in protected activity... However, the only parties that are entitled to make a claim under this provision are those who are close relatives of an individual who did in fact engage in a protected activity").

## COUNT III
### Violation of Title VII of the Civil Rights Act of 1964 ("Title VII")
([1] Race Discrimination; [2] Retaliation; and [3] Hostile Work Environment)

42. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

43. During Plaintiff's employment with Defendant, he was subjected to discrimination and a hostile work environment through disparate treatment, pretextual admonishment, and demeaning and/or derogatory treatment because of his race.

44. Plaintiff complained to Defendant's management about the aforesaid racial discrimination that he was being subjected to.

45. Instead of investigating Plaintiff's aforesaid complaints of race discrimination, Defendant's management ignored them and subjected him to retaliation, including but not limited to ultimately terminating his employment for completely pretextual reasons on or about October 9, 2018.

46. Plaintiff believes and therefore avers that he was really terminated because of his race and/or his complaints about race discrimination.

47. These actions as aforesaid constitute unlawful discrimination, retaliation, and a hostile work environment under Title VII.

## COUNT IV
### Violations of 42 U.S.C. Section 1981
([1] Race Discrimination; [2] Retaliation; and [3] Hostile Work Environment)

48. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

49. During Plaintiff's employment with Defendant, he was subjected to discrimination and a hostile work environment through disparate treatment, pretextual admonishment, and demeaning and/or derogatory treatment because of his race.

50. Plaintiff complained to Defendant's management about the aforesaid racial discrimination that he was being subjected to.

51. Instead of investigating Plaintiff's aforesaid complaints of race discrimination, Defendant's management ignored them and subjected him to retaliation, including but not limited to ultimately terminating his employment for completely pretextual reasons on or about October 9, 2018.

52. Plaintiff believes and therefore avers that he was really terminated because of his race and/or his complaints about race discrimination.

53. These actions as aforesaid constitute unlawful discrimination, retaliation, and a hostile work environment under Section 1981.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C. Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

Respectfully submitted,

KARPF, KARPF & CERUTTI, P.C.

By: _____
Ari R. Karpf, Esq.
3331 Street Rd.
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: February 11, 2019

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Justin Smith | : | CIVIL ACTION |
| v. | : | |
| Walmart, Inc. d/b/a Wal-Mart Supercenter | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (X)

| | | |
|---|---|---|
| 2/11/2019 | _[signature]_ | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 639-0801 | (215) 639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: 11908 Millbrook Road, Philadelphia, PA 19154

Address of Defendant: 4301 Byberry Road, Philadelphia, PA 19154

Place of Accident, Incident or Transaction: Defendant's place of business

---

*RELATED CASE, IF ANY:*

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes [ ]   No [X]

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes [ ]   No [X]

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes [ ]   No [X]

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes [ ]   No [X]

I certify that, to my knowledge, the within case [ ] is / [X] is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 2/11/2019   _____ *Attorney-at-Law / Pro Se Plaintiff*   ARK2484 / 91538   *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

A. *Federal Question Cases:*
1. [ ] Indemnity Contract, Marine Contract, and All Other Contracts
2. [ ] FELA
3. [ ] Jones Act-Personal Injury
4. [ ] Antitrust
5. [ ] Patent
6. [ ] Labor-Management Relations
7. [X] Civil Rights
8. [ ] Habeas Corpus
9. [ ] Securities Act(s) Cases
10. [ ] Social Security Review Cases
11. [ ] All other Federal Question Cases
    *(Please specify):* _____

B. *Diversity Jurisdiction Cases:*
1. [ ] Insurance Contract and Other Contracts
2. [ ] Airplane Personal Injury
3. [ ] Assault, Defamation
4. [ ] Marine Personal Injury
5. [ ] Motor Vehicle Personal Injury
6. [ ] Other Personal Injury *(Please specify):* _____
7. [ ] Products Liability
8. [ ] Products Liability – Asbestos
9. [ ] All other Diversity Cases
    *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Ari R. Karpf, counsel of record *or* pro se plaintiff, do hereby certify:

[X] Pursuant to Local Civil Rule 53.2, § 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

[ ] Relief other than monetary damages is sought.

DATE: 2/11/2019   _____ *Attorney-at-Law / Pro Se Plaintiff*   ARK2484 / 91538   *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
SMITH, JUSTIN

**DEFENDANTS**
WALMART, INC. D/B/A WAL-MART SUPERCENTER

**(b)** County of Residence of First Listed Plaintiff  Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Karpf, Karpf & Cerutti, P.C.; 3331 Street Road, Two Greenwood Square, Suite 128, Bensalem, PA 19020; (215) 639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated *or* Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated *and* Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII (42USC2000); Section 1981 (42USC1981); ADA (42USC12101)

Brief description of cause:
Violations of Title VII, Section 1981, the ADA and the Pennsylvania Human Relations Act.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE 2/11/2019

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

[Print] [Save As...] [Reset]